UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

ETHEL MARIE SIMS,  )
                   )
    Plaintiff,     )
                   )   NO. 2:17-CV-004
    vs.            )
                   )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
                   )
    Defendant.     )

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's Disability Insurance Benefits application under the Social Security Act, Title II (the "Act") was denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Plaintiff filed a Motion for Judgment on the Pleadings [Doc. 12]. Defendant filed a Motion for Summary Judgment [Doc. 19] to which Plaintiff filed a response [Doc. 21].[1]

**I.   APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the

---

[1] Plaintiff filed a document titled "Trial Brief" [Doc. 13] in support of the dispositive motion. Upon notification that the wrong ECF event was used [Doc. 14], she refiled the brief as a Memorandum [Doc. 15], in support of her Motion. The Court will only refer to the Memorandum herein. Also, Local 5.1 requires that all motions and other papers presented for filing must be double-spaced. Plaintiff's motion, duplicative memoranda and response are noncompliant with this requirement. The Court will resolve the substantive motion in lieu of striking these filings, however.

Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Humans Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). A Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007). The Court may consider any evidence in the record regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4).

The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II. RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A. Procedural History

Ethel Marie Sims ("Sims") was a person of advanced age at the time of her application for Disability Insurance Benefits. 20 C.F.R. § 404.1563. She alleged an onset date of August 1, 2013, and had insured status through June 30, 2015. (Doc. 29, Transcript p. 28) (reference to "Tr" and the page denote the administrative record). She alleged impairments she believed to be disabling.

Sims's claims were initially denied in January 2014 and upon reconsideration in July 2014 (Tr. 28). An ALJ conducted a hearing on September 15, 2015. Sims and a vocational expert ("VE") testified, although the VE only addressed Sims's past work. (Tr. 62-63). The ALJ followed the five-step analysis in evaluating the claims and found several of Sims's alleged impairments to be medically determinable. These conditions included diabetes mellitus, atrial fibrillation, hypertension, osteoporosis, obesity, a depressive disorder, and an anxiety disorder. (Tr. 30).

Ultimately, the ALJ made the dispositive finding that Sims's impairments, or a combination thereof, were not severe under step two of the analysis. This decision concluded the process and resulted in a determination Sims was not disabled.

The findings were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2015;

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2013, through her date last insured of June 30, 2015 (20 CFR 404.1571 *et seq.*);

3. Through the date last insured, the claimant had following medically determinable impairments: diabetes mellitus, atrial fibrillation, hypertension, osteoporosis, obesity, a depressive disorder, and an anxiety disorder. (20 CFR 404.1521 *et seq.*);

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*); and

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2013, the alleged onset date, through June 30, 2015, the date last insured. (20 CFR 404.1520(c)).

(Tr. 20-30).[2] The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B.   Evidence in the Record**

The ALJ summarized the evidence. (Tr. 31-34). Sims's brief does not include an overview of the record evidence [Doc. 15]. The Commissioner's brief reviews the record in detail [Doc. 20, pp. 2-8]. The transcript contains the reports of state agency reviewers who addressed Sims's physical and mental conditions. (Tr. 68-75, 83-89). Reference to the evidence is only set forth herein as necessary.

---

[2] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

## III. ANALYSIS

Sims asserts the ALJ's finding that she does not have a severe impairment or combination of impairments was not supported by substantial evidence. The Commissioner opposes the motion and seeks summary judgment on the basis that substantial evidence supports the Decision.

### A. Applicable Authority

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted order can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Subsections (d)(2)(A) and (B) provide:

> (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such works exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work . . .
>
> (B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairments could be the basis of eligibility under this section, the Commissioner . . . shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. . ..

The regulations also require impairments to be severe. 20 C.F.R. § 404.1520(a)(4)(ii). If a person's impairment or combination of impairments does not significantly limit the physical or mental ability to do basic work activities, a severe impairment will not be found and the person is not disabled. 20 C.F.R. § 404.1520(c). Severity of impairments and relation to basic work activities are discussed in 20 C.F.R. § 404.1521:

> When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

The Sixth Circuit has construed the aforementioned regulations as a *de minimis* hurdle in the disability determination process. *Murphy v. Secretary of Health & Human Services,* 801 F.2d 182, 185 (6th Cir.1986); *Salmi v. Secretary of Health & Human Services,* 774 F.2d 685, 690–92 (6th Cir.1985); *Farris v. Secretary of Health & Human Services,* 773 F.2d 85, 89–90 (6th Cir.1985). Per this *de minimis* view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Farris,* 773 F.2d at 90. Further, the "severity inquiry . . . serves the goal of administrative efficiency allowing the Secretary to screen out totally groundless claims." *Id.* at 89.

Evaluation of symptoms and pain factors into the analysis of severity. 20 C.F.R. § 404.1528. Symptoms and pain and the extent to which they can reasonably be accepted as consistent with objective medical evidence are considered. "Objective medical evidence" includes a statement as to symptoms and pain, but statements alone will not establish disability. *Id.*

Further, Social Security Ruling 85-2 has been issued to guide decisions as to impairment severity and provides in pertinent part:

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their)

6

> limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28, 1985 WL 56856 (1985). Finally, the claimant bears the burden of showing she has a severe impairment or a combination of severe impairments. *See Bowen v. Yuckert,* 482 U.S. 137, 146, fn. 5 (1987).

**B.    ALJ's Finding of No Severe Impairments**

The key issue here is whether, at step two in the sequential process, substantial evidence supports the ALJ's decision that Sims had no severe impairments. To answer this question, the Court must examine what medical evidence was before the ALJ in making his judgment.

**1.    Mental Impairments**

With regard mental impairments, the record contains very little documentation of mental health treatment. In particular, there are thirteen pages of mental health records (Tr. 407-09, 430-439). Several pages detail Sims's March 2015 intake appointment, diagnoses, and recommendation of individual psychotherapy. Three of the pages relate to efforts by Frontier Health to coordinate care with Sims's primary care physician in March 2015 and advise the physician of her diagnosis with depressive disorder and anxiety disorder and that no medication was prescribed. (Tr. 407-09). The medical records list cancellations and missed appointments in April, May and June 2015. (Tr. 436-438). There are also no records dated after June 2015. The absence of records beyond an intake report, along with missed appointments the ALJ cited as part of the basis for determining the condition was not severe and his finding Sims was not entirely

credible, strongly support the ALJ's determination that Sims did not have a severe mental impairment. Indeed, this conclusion is bolstered by Sims's own testimony that her depression and anxiety is "pretty well under control." (Tr. 56).

The only expert opinions as to mental impairments were provided by state agency medical consultants, Norma Calway-Fagen, Ph.D. and Horace Edwards, Ph.D. (Tr. 71, 84). In January 2014, Dr. Calway-Fagen determined from her review of the records that Sims's anxiety disorder did not impair her beyond a mild impairment in maintaining concentration, persistence and pace; she concluded that the mental health impairment is not severe. (Tr. 70-71). Dr. Edwards made similar determinations in June 2014. (Tr. 84).

While Step Two is considered a *de minimis* hurdle, when assessing whether a mental impairment is severe, "the regulations provide that if a claimant's degree of [mental] limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in" a claimant's "ability to do basic work activities." *Griffeth v. Comm'r of Soc. Sec.*, 217 F'App'x 425, 428 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1520a(d))(internal quotations omitted). There is no indication Sims's basic work activities are hindered by her mental impairments. In fact, it appears her impairments arose, at least in part, as a result of the loss of her job in 2012. (Tr. 429). Further, the very limited treatment, which was essentially just an intake session, along with claimant's admission her mental impairments are under control despite lack of the recommended counseling, absence of prescription medication to treat the condition, and the opinions of two mental health reviewers, also support the ALJ's treatment of Sims's mental impairment. Substantial evidence supports the ALJ's finding that Sims does not suffer from a severe mental impairment.

## 2. Physical Impairments

With regard to physical impairments, an impairment is severe if it or in combination of other impairments "significantly limits Plaintiff's physical ability to do basic work activities." *See* 20 C.F.R. 404.1520(c). Basic work activities are the abilities and aptitudes necessary to do most jobs.[3] 20 C.F.R. § 404.1522.

No treating physician opined regarding the severity of any of Sims's physical impairments. Rather, the record contains two opinions from state agency reviewers. Dr. Homayoon Moghbeli, M.D. opined in January 2014 that Sims had the medically determinable impairments of recurrent arrhythmias, diabetes mellitus, hypertension, asthma and anxiety disorders. (Tr. 69). Dr. Moghbeli found these impairments could reasonably be expected to produce the alleged symptoms but that the intensity of the symptoms and their impaction on functioning was not consistent with the totality of the evidence. Of these impairments, he opined that only the recurrent arrhythmias were severe. (Tr. 69). He noted she takes Coumadin. Dr. Moghbeli also restricted Sims's from climbing ladders, ropes or scaffolds, that she should avoid heights, concentrated exposure to extreme heat and cold and fumes, odors, dusts, gases and poor ventilation, and all exposure to hazards. (Tr. 73). Dr. Iris Rotker also reviewed the record in June 2014 and opined that the arrhythmia was a severe impairment but not at a listing level. (Tr. 87).

> The ALJ is not bound by the opinions of either Drs. Moghbeli or Rotker.
>
> In considering non-treating physician opinions, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physician,

---

[3] Examples of basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in work environments. *Id*.

9

psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate the consultative physician's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6), the same factors used to analyze the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(e)(2)(iii); *Jericol Mining, Inc. v. Napier,* 301 F.3d 703, 710 (6th Cir.2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); *Sommer v. Astrue,* No. 3:10–CV–99, 2010 WL 5883653, at *6 (E.D.Tenn. Dec.17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

*Webster v. Colvin*, No. 3:14-CV-253-TAV-CCS, 2015 WL 4921633, at *9 (E.D. Tenn. Aug. 18, 2015).

In this case, the ALJ gave the state agency medical consultants little weight on the grounds that "the medical record does not document any physical impairment of the severity to pose more than a mild limitation on the claimant's work-related abilities." (Tr. 35). The ALJ then noted that Sims's atrial fibrillation was well controlled with conservative medication and that "she had not consistently endorsed any significant complications, secondary to these disorders." (Tr. 35). Regarding her atrial fibrillation, he noted that an echocardiogram revealed only mild regurgitation abnormalities and she had a normal ejection fraction. Her myocardial perfusion scan was normal. She was only taking anti-arrhythmic and blood thinner medication and was "doing fine" upon discharge. Her primary care provider, on September 11, 2013, stated her atrial fibrillation was "stable." On October 21, 2013, her cardiologist, Dr. Vipul Brahmbhatt noted Sims endorsed greater fatigue and occasional palpitations, but she denied any syncope, edema, and uncontrolled blood pressure. (Tr. 32). In September 2014, she reported that she was feeling better and her only complaint was occasional leg pain and cramping, and she denied shortness of breath with exertion. She had not had a recurrence of atrial fibrillation, which was controlled on medication.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996) notes that ALJs are required to consider state agency medical "findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and Appeals Council are not bound by findings made by State agency ... but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* In fact, SSR 96-6p provides that "the opinions of State agency medical … consultants and other program physicians and psychologists can be given weight only insofar as they are *supported by evidence in the case record*, considering such factors as the supportability of the opinion in the evidence…." *Id.* In this case, that is what the ALJ did. He evaluated the state agency medical opinions in light of the other evidence in the record. In ascribing little weight to their opinion, he found their opinion was not consistent with the record as a whole, citing to specific examples that contradicted the state agency's reviewer's opinions regarding the severity of the impairment. As a consequence, the ALJ found she did not have any physical impairment that would significantly limit her physical ability to do basic work activities and found her not disabled. See 20 C.F.R. § 416.920(c)("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.").

In making this determination, the ALJ considered the medical evidence reflecting Plaintiff's treatment records regarding her cardiovascular issues. In detailing these records, the ALJ found that there was no indication that her conditions caused any work-related limitations. He noted that her atrial fibrillation was controlled on medication with no recurrence (Tr. 32). The

Court finds that the ALJ applied the appropriate "*de minimus*" standard and did not apply a greater standard at step two. See *Turner v. Comm'r of Soc. Sec.*, No. 14-1035, 2015 WL 251496 (W.D. Tenn. Jan. 20, 2015) (finding that the ALJ applied the correct legal standard when concluding at step two of the sequential analysis that the plaintiff did not show that his medically determinable impairments were severe and that the plaintiff was therefore not disabled). While she complains of shortness of breath, she does not point to any evidence in the record that supports her assertion that this condition limits her ability to perform basic work activities. The mere diagnosis of any condition does not establish that an impairment is severe. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Carpenter v. Comm'r of Soc. Sec.*, No. 3:16 CV 720, 2017 WL 1038913, at *11 (N.D. Ohio Mar. 17, 2017)("[D]iagnosis of a condition alone does not necessarily make the condition severe.").

The ALJ, in this case, determined that "the record is unpersuasive in evidence that [any medically determinable physical or mental impairments] result in more than a minimal limitation on the claimant's work-related activities." (Tr. 33). Regarding the atrial fibrillation, he notes that it

> was easily remedied and well controlled, without recurrence, on routine medication. Diagnostic cardiac testing was negative for significant abnormalities, dysfunction, or damage, and since the one episode in August 2013, the claimant has not necessitate emergency room or hospital care for evaluation or treatment of the disorder. Moreover, since the onset of cardiac issues in August 2013, the claimant has only seen her treating cardiologist on three occasions, and during each encounter, few, if any, changes were made to her conservative treatment regimen and her clinical presentations were grossly benign.

(Tr. 33-34). Substantial evidence supports the ALJ's determination regarding Sims's physical impairments.

## IV. CONCLUSION

Based upon the foregoing, the Court finds substantial evidence supports the ALJ's

decision. Accordingly, the court RECOMMENDS that Plaintiff's motion for summary judgment [Doc. 12] be DENIED. The Court RECOMMENDS the Commissioner's motion for summary judgment [Doc. 19] be GRANTED for the reasons stated herein.[4]

                                                            Respectfully Submitted,

                                                            s/ Clifton L. Corker
                                                            UNITED STATES MAGISTRATE JUDGE

---

[4]Objections to this Report and Recommendation must be filed within fourteen (l4) days after service of a copy of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).